IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WAYNE B., ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 7:18-CV-70 |
| ) | |
| ANDREW SAUL, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

### REPORT AND RECOMMENDATION

Plaintiff Wayne B. ("Wayne") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Wayne alleges that the ALJ erred by disregarding the medical opinions in the record, improperly evaluating his symptoms, failing to perform a function by function analysis, and by concluding that he could perform medium work. I conclude that the ALJ failed to adequately explain the weight he gave to the medical opinions in the record and how he determined that Wayne is capable of medium work, so as to allow for meaningful review. Accordingly, I **RECOMMEND GRANTING in part** Wayne's Motion for Summary Judgment (Dkt. No. 11), and **DENYING** the Commissioner's Motion for Summary Judgment. Dkt. No. 14.

### STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Wayne failed to demonstrate that he was disabled under the

1

Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the court remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636, Monroe, 826 F.3d. at 189. Similarly, I find that remand is appropriate here because the ALJ's opinion leaves the court to guess at how he reached his conclusions regarding Wayne's RFC.

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

## CLAIM HISTORY

Wayne filed for SSI and DIB on May 19, 2014, claiming that his disability began on October 1, 2012.[2] R. 12. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 120–45. On March 17, 2017, ALJ Dan Balutis held a video hearing to consider Wayne's disability claim. R. 31–84. Wayne was represented by an attorney at the hearing, which included testimony from Wayne and vocational expert Nadine Henzes. Id.

On April 7, 2017, the ALJ entered his decision analyzing Wayne's claim under the familiar five-step process,[3] and denying Wayne's claim for disability. R. 12–23. The ALJ found that Wayne suffered from the severe impairments of diabetes mellitus, small fiber neuropathy, and obesity. R. 14. The ALJ further found that Wayne retained the RFC to perform a broad range of medium work, and can lift/carry and push/pull up to 25 pounds frequently and 50 pounds occasionally; can occasionally crawl and climb ramps and stairs; can never climb ladders, ropes or scaffolds; can frequently stoop, kneel and crouch; can be exposed to unlimited vibrations and loud noise; can frequently work in occupations at unprotected heights, with moving mechanical parts and operate a motor vehicle; and can frequently work in weather, humidity, wetness, dust, odors, pulmonary irritants, extreme cold, but never in extreme heat. R. 18. The ALJ determined that Wayne could return to his past relevant work as an extruder and

---

[2] In briefing and oral argument before this court, Wayne's counsel indicated that he is amending his onset date to the date of his 55th birthday, January 8, 2015. Pl. Br. Summ. J. p. 5.

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

cleaner, and that other jobs exist in significant numbers in the national economy that he can perform, such as packer, bagger, and vehicle cleaner. R. 22–23. Thus, the ALJ concluded that Wayne was not disabled. Id.

Wayne requested that the Appeals Council review the ALJ's decision. On January 10, 2018, the Appeals Council denied Wayne's request for review (R. 1–4), and this appeal followed.

## **ANALYSIS**

Wayne argues that the ALJ erred by disregarding all of the medical opinions in the record which concluded that Wayne was capable of no more than light exteriorial work, and instead concluding that Wayne is capable of medium work. Wayne was 56 years old on his date last insured, has a high school education and last worked in maintenance/housekeeping at a medium level of exertion. R. 45, 55, 74. Wayne has diabetes and complained of episodes involving dizziness, shortness of breath, sweating, nausea and chest pains for several years. Wayne's primary care physician referred him for cardiac and pulmonary testing, which was negative. Wayne sought treatment from several neurologists and, after multiple visits and tests, was eventually diagnosed with autonomic dysfunction and small fiber neuropathy. R. 593–94, 629–32, 707–08.

The ALJ reviewed and weighed three opinions from medical providers when assessing Wayne's RFC. The ALJ gave "limited" and "little" weight to all three of the medical opinions in the record, including the opinions of Wayne's treating physician and treating neurologist. R. 20–21. The ALJ rejected the findings of the Wayne's physicians that he was limited to light work and instead determined that he can perform medium work.

4

Specifically, on August 26, 2014, state agency medical specialist James Wickham reviewed Wayne's records and determined that he was limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently; and standing/walking and sitting six hours in an eight hour workday. R. 127–128. The ALJ did not discuss this opinion in his decision.

On September 20, 2016, Wayne's treating physician, Scott C. Hippeard, M.D., completed a physical capacities evaluation and found that Wayne was capable of sitting for 30 minutes at a time for a total of four hours in an eight hour workday, and standing for 20 minutes at a time, for a total of one hour in an eight hour workday, due to his weakness, shortness of breath, fatigue and sweating. R. 633. Dr. Hippeard found that Wayne would need the flexibility to change positions frequently, and can occasionally lift or carry up to 20 pounds, but never lift or carry over 20 pounds. R. 633–34. Dr. Hippeard noted that Wayne has limitations with his right upper extremity, and cannot squat, crawl, climb, or kneel. R. 634–35. Dr. Hippeard found that Wayne could not tolerate exposure to unprotected heights, moving machinery, marked changes in temperature, dust, fumes, gases, smoke and perfumes, or noise. R. 635. Dr. Hippeard also noted that Wayne's objective sings of pain were redness, nerve/muscle findings and cardiac/angina; that Wayne's pain was chronic and slight to moderate; and that he would need to lie down and move about frequently during the day. Dr. Hippeard found that Wayne would miss work frequently due to exacerbations of pain and would be unreliable. Dr. Hippeard added that Wayne is "severely limited in ability to work due to heat intolerances, fatigue, weakness, pain." R. 636.

The ALJ considered Dr. Hippeard's opinion and gave it little weight, stating:

> This is not consistent [with the] longitudinal record or with the benign exam performed by Dr. Hippeard on the same day this form was completed. Dr. Hippeard noted the follow-up appointment was for prescriptions refills and to complete the disability form. Dr. Hippeard notes state he found a relatively normal

5

exam where he noted only some weakness in the right upper extremity status post a gunshot wound.

R. 21.

On October 26, 2016, neurologist Howard B. Sherman, M.D., saw Wayne for a follow up of his autonomic dysfunction complaints. R. 707. Dr. Sherman's impressions were autonomic neuropathy secondary to a small fiber neuropathy from diabetes; hyperreflexia and upper extremity weakness with exercise; and chest pain with exertion. Id. Dr. Sherman talked to Wayne about disability and stated, "[g]iven the fact that fairly limited activity causes the increased sweating and chest pain, I have indicated I do not think he is able to work and is totally disabled. I have recommended continuing to pursue the disability." R. 708.

The ALJ reviewed Dr. Sherman's note and gave it little weight, noting,

> Dr. Sherman has seen this claimant twice and neither exam reflects support for this opinion. The first encounter, he stated that he did not have much more to offer and referred him to autonomic dysfunction clinics and stated he would see him again if necessary. This second visit in which he stated the claimant is totally disabled, he found a relatively normal physical exam and was still recommending other testing as most of the tests have come back as normal. …This opinion is not consistent with the longitudinal record or the claimant's actual functioning. The claimant mows the lawn, drives, and shops, cleans, and does laundry. As such, I give this opinion little weight.

R. 21.

On December 4, 2014, state agency physician Richard Surrusco, M.D., reviewed Wayne's records and determined that he would be limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking for a total of one hour in an eight hour workday; unlimited pushing and pulling; and could never climb ladders, ropes, scaffolds. R. 140–41. Dr. Surrusco noted that Wayne is "a type II diabetic with episodic symptoms thought most likely to be on basis of diabetic dysautonomia with provocative factors including exertion." R. 141.

> The ALJ gave Dr. Surrusco's opinion little weight, stating
>
> > This is not consistent with the record where the claimant complains of episodes where he sweats, has chest pains, shortness of breath, nausea and sometimes vomiting but he has undergone extensive testing which was all normal. The claimant's exams also note no motor, gait, sensory or reflex findings to support a reduction to light exertion. The claimant mows the lawn, drives, and shops, cleans, and does laundry. As such, I give this assessment little weight.

R. 20.

Wayne argues that the ALJ erred by rejecting all of the medical opinion evidence in the record that he was limited to no more than light exertional work, and finding instead that Wayne was capable of medium exertional work. Wayne asserts that the ALJ's reasoning for rejecting the medical opinion evidence and concluding that he can perform medium work is not supported by his objective medical findings, his daily activities or the record as a whole.

When making an RFC assessment, the ALJ must assess every medical opinion received into evidence. See 20 CFR § 404.1527(c). The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 416.927(c)(2). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)–(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's

7

opinion." Ricks v. Comm'r, No. 2:09-cv-622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citing Burch v. Apfel, 9 Fed. Appx. 255, 259 (4th Cir. 2001) (per curiam).

While an ALJ is under no obligation to accept any medical opinion, he or she must explain the weight afforded to each opinion. See Monroe, 826 F.3d at 190–91. If the ALJ provides a sufficient explanation, the court "must defer to the ALJ's assignments of weights unless they are not supported by substantial evidence." Dunn v. Colvin, 607 Fed. Appx. 264, 267 (4th Cir. 2015) (citing Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012)). However, if the ALJ does not adequately explain the weight given to each medical opinion, the court cannot meaningfully review the ALJ's decision, and remand is warranted. Monroe, 826 F.3d at 190.

The Fourth Circuit recently clarified the level of explanation required by the ALJ to sufficiently support the weight given to a medical opinion. The ALJ must provide a narrative discussion describing how the evidence in the record supports each of his conclusions, citing specific medical facts and non-medical evidence, which "build[s] an accurate and logical bridge from the evidence to [its] conclusion." Monroe, 826 F.3d at 189. The failure of an ALJ to specifically state what treatment history or evidence contradicts a particular medical opinion means "the analysis is incomplete and precludes meaningful review." Id. at 190. "Where a lack of specificity and analysis prohibits the district court from gleaning the evidence relied upon or the reasoning for weight afforded contradictory opinions, the district court cannot merely look to the record or conclusory statements within the opinion, but must remand the case so that the ALJ can adequately explain if and how the evidence supports his RFC determination." Rucker v. Colvin, No. 715cv148, 2016 WL 5231824, at *4 (W.D. Va. Sept. 20, 2016) (citing Mascio, 780 F.3d at 637). Here, the ALJ provided insufficient reasoning to discount the medical opinions in

8

the record; and further failed to provide sufficient explanation of how he determined that Wayne was capable of performing medium work.

The ALJ gave all three physician opinions in the record limited weight based upon their "relatively normal" or "benign" examinations of Wayne; Wayne's normal test results; and Wayne's reports of daily activities. However, the symptoms that Wayne asserts limit his ability to function—dizziness, sweating, shortness of breath, nausea, and cardiac pain— are episodic and specifically triggered by exertion. These symptoms were not expected to result in abnormal physical examinations during his treatment visits, nor were they reflected by cardiac or pulmonary testing. Indeed, Wayne's treatment records reflect that his symptoms were difficult to objectively test, resulting in multiple visits to his primary care physician and specialists to eventually receive a diagnosis of small fiber neuropathy. R. 369–95, 416, 530, 593–97, 629–32, 707–09. The opinions of Drs. Hippeard, Sherman and Surrusco all reflect that Wayne's limiting symptoms are episodic and related to exertion; and based upon their professional experience, they limited Wayne to work with no more than light exertion. R. 140–41, 633–36, 707–08.

The ALJ also found that the physician opinions in the record were contradicted by Wayne's reported daily activities of tending to his personal care, cleaning, mowing the lawn, preparing meals, shopping, reading, and watching television. The ALJ stated, "[t]his level of activity is not consistent with someone alleging severe and wholly debilitating symptomatology." R. 20. However, Wayne's records reflect consistent reports of his episodic symptoms being triggered by minimal exertion, including mowing the lawn. See R. 286 ("Typically occurs with moderate exertion (e.g. mowing the lawn), but now notes episodes are occurring with minimal exertion (mopping last night)"); R. 378 (Emergency Room visit for chest tightness after attempting to mow the yard); R. 405 ("He states for the past year, he has had continued chest

9

discomfort, shortness of breath with exertion….he used to be able to mow his yard. At this point, it takes him at least 4 hours to mow his yard as he has to stop and rest multiple times."); R. 593 ("The spells are triggered by heat or any exertion. It takes him 2 days to mow the lawn."). Wayne testified at the administrative hearing that he does not perform any yard work. R. 62. Wayne also testified at the administrative hearing that he does not shop, and when he last went to the grocery store over a year before the administrative hearing he had trouble breathing and sweating and felt like he was having a heart attack. R. 60–61.

"An ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2019) (emphasis in original). Here, the ALJ erred by discounting the medical opinions in the record based upon daily activities listed on Wayne's disability application, without also considering the extent to which Wayne actually performed those activities.

The ALJ also failed to explain how, after rejecting the three medical opinions in the record, he determined that Wayne was capable of medium exertion level work. The ALJ reviewed Wayne's medical records and testimony of limitations, and found that the longitudinal evidence of record did not support his allegations regarding his symptoms. R. 20. The ALJ noted that Wayne's "spells" on exertion are not reflected on numerous tests; he has relatively benign physical exams with normal cardiac findings and normal pulmonary studies; and doctors recommended better control of his diabetes to help the small fiber neuropathy. R. 20. However, the ALJ did not explain how these findings resulted in his conclusion that Wayne could perform the tasks required by medium work. See Woods, 888 F.3d at 694 (The ALJ failed to build accurate and logical bridge form evidence to RFC where he failed to explain how he concluded that claimant could perform medium work.) The ALJ did not point to any specific evidence

10

reflecting that Wayne is capable of medium exertion level work. Rather, it appears that "the ALJ rejected [the] medical opinions and, instead, formed his own RFC based on the raw medical data. This he was forbidden to do." Farrar v. Astrue, No. 3:11cv457-JAG, 2012 WL 3113159, at *11 (E.D. Va. July 13, 2012) (citing Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). While the ALJ was permitted to assign different levels of weight to the medical opinions in the record, the ALJ cannot "impermissibly substitut[e] his lay opinions for the judgments of medical professionals who had treated and examined [claimant] over many years." Brown v. Comm'r, 873 F.3d 251 (4th Cir. 2017).

Further, after reviewing and rejecting the physician opinion evidence in the record, all of which found that Wayne was limited to light work, the ALJ stated:

> The records from treating sources do not support work related imitations as significant as those alleged by claimant. His relatively benign physical exams, relatively benign imaging, and actual level of activity are inconsistent with a finding of "disability." Accordingly, the claimant is found capable of performing a ***range of light work*** on a sustained and consistent basis despite the limitations rising from his impairments.

R. 21 (emphasis added). During oral argument, the Commissioner asserted that this statement by the ALJ that Wayne is limited to light work is simply a typo and should be disregarded. However, here all the physician opinion evidence reflects a light work limitation, the ALJ expressly stated that the claimant is limited to light work, but then the ALJ provided an RFC of medium work. There is no evidence reflected in the ALJ's decision providing a basis for the ALJ's conclusion that Wayne is capable of medium work, and the ALJ does not explain in his decision how he arrived at an RFC of medium work. Thus, I find that the ALJ's statement that Wayne is limited to light work, together with his RFC of medium work, is an inconsistency in the opinion without explanation.

11

The record is replete with evidence reflecting that Wayne's autonomic dysfunction symptoms are triggered by exertion. Yet, the ALJ concluded that Wayne retained an RFC to perform medium work despite the opinions of a treating physician, a treating specialist and a state agency physician that he could perform at most, light work. The ALJ provided no support for his conclusion that Wayne was capable of medium work, aside from generally noting Wayne's "relatively normal" and "benign" physical examinations, and inaccurately representing Wayne's daily activities. Thus, the ALJ assessed a greater RFC than any medical opinion in the record and dismissed the physician's opinions without sufficient explanation. The record may contain evidence to support the ALJ's conclusions, but it is the responsibility of the ALJ to explain his conclusions and point to the record evidence to support those conclusions. Only then can a court engage in a meaningful review to determine whether substantial evidence supports the ALJ's decision.

## CONCLUSION

For the reasons set forth above, I recommend **GRANTING in part** Wayne's motion for summary judgment, **DENYING** the Commissioner's motion for summary judgment, and remanding this matter to the Commissioner pursuant to sentence four of 42 U.S.C. §405(g) for further consideration consistent with this opinion.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the

parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Enter: June 24, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge